## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re: UBS FINANCIAL SERVICES, INC. OF
PUERTO RICO SECURITIES LITIGATION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case: 1:15-mc-00191
Assigned To : Mehta, Amit P.
Assign. Date : 2/11/2015
Description: Miscellaneous
**Case pending in the United States District
Court for the District of Puerto Rico – Civil
Action No. 3:12-cv-01633-CCC**

**HEARING REQUESTED**

## DEFENDANTS' MOTION TO QUASH SUBPOENA

Defendants UBS Financial Services Incorporated of Puerto Rico, UBS Trust

Company of Puerto Rico, UBS Financial Services Inc., and Carlos J. Ortiz (collectively,

"Defendants"), by and through their undersigned counsel, respectfully move the Court to quash

the subpoena *duces tecum* (the "Subpoena") served on the U.S. Securities and Exchange

Commission (the "SEC") by SDM Holdings Inc., Carmelo Roman and Ricardo Roman-Rivera

(collectively, "Plaintiffs"), the plaintiffs in *In re UBS Financial Services, Inc. of Puerto Rico*

*Securities Litigation*, Civil Action No. 3:12-cv-01663-CCC (D.P.R. filed Aug. 13, 2012). A

Proposed Order is attached.

As set forth more fully in the accompanying Memorandum of Points and

Authorities, Plaintiffs' Subpoena should be quashed for the following reasons:

*First*, the Subpoena seeks from the SEC confidential documents that Plaintiffs

have already sought from Defendants directly. The Subpoena appears designed to evade

Defendants' valid objections to re-producing its SEC production to Plaintiffs. Moreover,

Defendants have already agreed to produce, from their original files, the same documents that

Plaintiffs seek from the SEC, subject to agreement on an appropriate method for electronic

discovery.

*Second*, the Subpoena places an undue burden on the SEC.  Plaintiffs' Subpoena unnecessarily burdens the SEC with reviewing millions of confidential and proprietary documents belonging to Defendants to produce the same documents Plaintiffs could obtain from Defendants directly.  Defendants are far better suited to review these documents for responsiveness and confidentiality than the SEC.

*Third*, in the alternative, Defendants respectfully request that the Court should stay a decision on this Motion or transfer the motion to the District of Puerto Rico so that the Court before whom the underlying litigation is pending may decide the  proper scope of discovery in this action.

Pursuant to Local Civil Rule 7(m), Defendants have consulted with counsel for Plaintiffs, who oppose this motion.

Dated:  February 11, 2015

Respectfully submitted,

Andrew M. Lawrence (D.C. Bar No. 494537)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005-2111
Tel: (202) 371-7097
Andrew.Lawrence@skadden.com

Paul J. Lockwood (D.C. Bar No. 1009825)
Nicole A. DiSalvo (D.C. Bar No. 1002519)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, DE  19899-0636
Tel.:  (302) 651-3000
Paul.Lockwood@skadden.com
Nicole.DiSalvo@skadden.com

*Counsel for Defendants UBS Financial*
*Services Incorporated of Puerto Rico, UBS*
*Trust Company of Puerto Rico, UBS*
*Financial Services Inc., and Carlos J. Ortiz*

## CERTIFICATE OF SERVICE

I hereby certify that, on February 11, 2015, the foregoing Motion and the

accompanying Memorandum of Points and Authorities, declaration and exhibits were filed by

hand with the Clerk of the Court and mailed via US Mail to:

ESPADA, MIÑANA, & PEDROSA LAW
  OFFICES, PSC.
Luis E. Minaña
USDC-PR No. 225608
122 Calle Manuel Dómenech Altos
Urb, Baldrich
San Juan, PR 00918
Tel.: (787) 758-6500
minalaw@prtc.net

and

Héctor Eduardo Pedrosa-Luna
USDC-PR No. 223202
P.O. Box 9023963
San Juan, PR 00902-7511
Tel.: (787) 920-7983
hectorpedrosa@gmail.com

*Co-Liaison Counsel*

Eric Quetglas-Jordan
QUETGLAS LAW OFFICES
USDC-PR No. 202514
P.O. Box 16606
San Juan, PR 00908-6606
Tel.: (787) 722-0635
Eric@Quetglaslaw.com

*Co-Liaison Counsel*

David R. Scott
Amanda Lawrence
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Tel.: (860) 537-5537
drscot@scott-scott.com
alawrence@scott-scott.com

and

Deborah Clark-Weintraub
Joseph P. Guglielmo
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Tel.: (212) 223-6444
dweintraub@scott-scott.com
jguglielmo@scott-scott.com

*Lead Counsel for Lead Plaintiffs*

Richard P. Rouco
QUINN, CONNOR, WEAVER, DAVIES &
   ROUCO, LLP
2700 Highway 280
Mountain Brook Center, Suite 380
Birmingham, AL 35223
Tel.: (202) 870-9989
rrouco@qcwdr.com

*Counsel for Plaintiffs*

Roberto C. Quiñones-Rivera
MCCONNELL VALDÉS LLC
270 Muñoz Rivera Ave.
Hato Rey, Puerto Rico  00918
Tel.: (787) 759-9292
rcq@mcvpr.com

*Attorneys for Defendants Puerto Rico Fixed
Income Fund III, Inc. and Puerto Rico Fixed
Income Fund V, Inc.*

Guillermo J. Bobonis
Enrique G. Figueroa-Llinas
BOBONIS, BOBONIS & RODRIGUEZ
POVENTUD
129 De Diego Ave.
San Juan, P.R. 00911-1927
Tel.: (787) 725-7941
gjb@bobonislaw.com
efl@bobnislaw.com

and

Melvin A. Brosterman
Francis C. Healy
STROOCK & STROOCK & LAVAN LLP

180 Maiden Lane
New York, NY  10038
Tel.:  (212) 806-5632
mbrosterman@stroock.com
fhealy@stroock.com

*Attorneys for Miguel A. Ferrer*

Dated:  February 11, 2015

Andrew M. Lawrence (D.C. Bar No. 494537)

*Attorneys for Defendants UBS Financial Services Incorporated of Puerto Rico, UBS Trust Company of Puerto Rico, UBS Financial Services Inc., and Carlos J. Ortiz*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                  :

In re: UBS FINANCIAL SERVICES, INC. OF   :    Civil Action No. _____
PUERTO RICO SECURITIES LITIGATION     :

                  :   **Case pending in the United States District**
                  :   **Court for the District of Puerto Rico – Civil**
                  :   **Action No. 3:12-cv-01633-CCC**

                  :
                  :   **HEARING REQUESTED**
                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANTS' MOTION TO QUASH SUBPOENA**

<br>

Andrew M. Lawrence (D.C. Bar No. 494537)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005-2111
Tel.: (202) 371-7097

Paul J. Lockwood (D.C. Bar No. 1009825)
Nicole A. DiSalvo (D.C. Bar No. 1002519)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899-0636
Tel.: (302) 651-3000

*Attorneys for Defendants UBS Financial*
*Services Incorporated of Puerto Rico, UBS*
*Trust Company of Puerto Rico, UBS Financial*
*Services Inc., and Carlos J. Ortiz*

## TABLE OF CONTENTS

Page

TABLE OF CASES & AUTHORITIES.......................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

RELEVANT FACTS .................................................................................................................. 3

     A.    The UBS Entities Produce Millions Of Pages Of Documents Containing
          Confidential Information To The SEC As Part Of A Broad Investigation
          Of The Puerto Rico Funds. ..................................................................................... 3

     B.    The SEC Settles With the UBS Entities, And Its Claims Against Ferrer
          And Ortiz Are Dismissed On The Merits. ............................................................... 4

     C.    Plaintiffs Seek To "Clone" The SEC's Discovery...................................................... 5

     D.    The Parties Engage In Four Months Of "Meet And Confer" Negotiations
          Regarding UBS' Productions To The SEC. .............................................................. 6

     E.    Plaintiffs' Subpoena Requests The Same Documents From The SEC That
          Plaintiffs Previously Requested From Defendants. ................................................... 8

ARGUMENT ............................................................................................................................. 8

I.     PLAINTIFFS' SUBPOENA SHOULD BE QUASHED BECAUSE IT IS AN
       ATTEMPT TO END-RUN THE NORMAL DISCOVERY PROCESS IN
       PUERTO RICO. ................................................................................................... 8

II.    PLAINTIFFS' SUBPOENA SHOULD BE QUASHED BECAUSE IT SEEKS
       IRRELEVANT DOCUMENTS AND WILL PLACE AN UNDUE BURDEN ON
       THE SEC TO COMPLY. ........................................................................................ 11

III.   ALTERNATIVELY, THE COURT MAY STAY A DECISION ON THE
       MOTION TO QUASH PENDING RESOLUTION OF THE SCOPE OF
       DISCOVERY BY THE DISTRICT OF PUERTO RICO OR TRANSFER THE
       MOTION TO PUERTO RICO. ................................................................................. 14

CONCLUSION .......................................................................................................................... 16

## TABLE OF CASES & AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Belk v. Smith*,
    No. 1:10CV724, 2014 WL 4986678 (M.D.N.C. Oct. 6, 2014) .........................................14

*Brown v. Tellermate Holdings Ltd.*,
    No. 2:11-cv-1122, 2014 WL 2987051 (S.D. Ohio July 1, 2014) .......................................8

*Capital Ventures International v. J.P. Morgan Mortgage Acquisition Corp.*,
    No. CIV.A. 12-10085-RWZ, 2014 WL 1431124 (D. Mass. Apr. 14, 2014).....................10

*Chen v. Ampco System Parking*,
    No. 08-cv-0422-BEN (JMA), 2009 WL 2496729 (S.D. Cal. Aug. 14, 2009)..................10

*Cusumano v. Microsoft Corp.*,
    162 F.3d 708 (1st Cir. 1998)............................................................................................13

*Education Finance Council v. Oberg*,
    No. 10-MC-0079 (JDB), 2010 WL 3719921 (D.D.C. Mar. 8, 2010)................................13

*EnviroPAK Corp. v. Zenfinity Capital, LLC*,
    No. 4:14CV00754 ERW, 2014 WL 4715384 (E.D. Mo. Sept. 22, 2014) .........................9

*Exxon Shipping Co. v. U.S. Dep't of Interior*,
    34 F.3d 774 (9th Cir. 1994) ...........................................................................................11

*In re Facebook PPC Advertising Litigation*,
    No. C09-03043 JF (HRL), 2011 WL 1324516 (N.D. Cal. Apr. 6, 2011)...........................9

*Floorgraphics v. News Am. Mktg. In-Store Servs.*,
    2007 WL 1544572 (D. Minn. May 23, 2007)..................................................................14

*Hesco Bastion Ltd. v. Greenberg Traurig LLP*,
    No. 09-0357 RWR/DAR, 2009 WL 5216932 (D.D.C. Dec. 23, 2009)..............................9

*King County v. Merrill Lynch & Co.*,
    No. C10-1156-RSM, 2011 WL 3438491 (W.D. Wash. Aug. 5, 2011) ...............................9

*Midwest Gas Servs., Inc. v. Indiana Gas Co.*,
No. IP99-0690-C-Y/G, 2000 WL 760700 (S.D. Ind. Mar. 7, 2000)..................................10

*\*In re Motion to Compel Compliance with Subpoena Direct to Department of Veterans Affairs*,
257 F.R.D. 12 (D.D.C. 2009)................................................................................11, 13, 14

*Nalco Co. v. Turner Designs, Inc.*,
No. 13-cv-02727 NC, 2014 WL 1311571 (N.D. Cal. Mar. 31, 2014)..............................13

*\*Pensacola Firefighters' Relief Pension Fund Board of Trustees v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
265 F.R.D. 589 (N.D. Fla. 2010) ......................................................................................10

*Prosonic Corp. v. Baker*,
No. 2:08–mc–007, 2008 WL 1766887 (S.D. Ohio Apr. 7, 2008) ....................................14

*Tara Productions,  Inc. v. Hollywood Gadgets, Inc.*,
No. 09-61436-CIV, 2014 WL 1047411 (S.D. Fla. Mar. 18, 2014) ....................................8

*Town of Wolfeboro v. Wright-Pierce*,
No. 12-cv-130-JD, 2014 WL 1713508 (D.N.H. Apr. 30, 2014)..................................11, 13

*Turnbow v. Life Partners, Inc.*,
No. 3:11-cv-1030-M, 2013 WL 1632795 (N.D. Tex. Apr. 16, 2013) .................................9

*\*Watts v. S.E.C.*,
482 F.3d 501 (D.C. Cir. 2007) ..............................................................................11, 12, 13

*\*Wultz v. Bank of China, Ltd*,
No. 13-1282 (RBW), 2014 WL 2257296 (D.D.C. May 30, 2014).....................................15

**RULES**

Fed. R. Civ. P. 26......................................................................................................................13

Fed. R. Civ. P. 45.........................................................................................................11, 12, 13

## PRELIMINARY STATEMENT

Plaintiffs have served a subpoena *duces tecum* on the U.S. Securities and Exchange Commission (the "SEC") that is a misguided attempt to side-step Defendants' well founded objections to this discovery on grounds of relevance and burdensomeness. Plaintiffs' subpoena requests are word-for-word identical to requests served directly upon Defendants that were the subject of extensive "meet and confer" discussions between the parties. By January 22, 2015, it became clear that the parties were at an impasse; therefore, Defendants expected Plaintiffs to raise this dispute with the District of Puerto Rico, where Plaintiffs' putative class action securities suit is pending. Instead, Plaintiffs tried to end run Defendants and the Puerto Rico Court by serving a subpoena for the same documents on the SEC in Washington, D.C. Plaintiffs' attempt to open a "new front" in this dispute is wasteful, inefficient and unfair to the SEC. If Plaintiffs are entitled to these documents, they should get them from Defendants by persuading the District of Puerto Rico that Plaintiffs are entitled to such documents.

The subpoena seeks documents that UBS Financial Services, Inc., UBS Financial Services Incorporated of Puerto Rico ("UBS PR"), and UBS Trust Company of Puerto Rico (collectively, the "UBS Entities") produced to the SEC as far back as six years ago during a wide-ranging investigation of Puerto Rico mutual funds managed by UBS (the "Puerto Rico Funds"). Plaintiffs' putative securities class action is based on some of the events investigated by the SEC. Last fall, Plaintiffs informally and then formally requested that Defendants produce every document produced to the SEC. Defendants objected that such a demand was outrageously overbroad – the UBS Entities produced millions of pages of documents in response to requests made under the SEC's broad investigatory powers.

Recognizing that they were overreaching, in late-January 2015, Plaintiffs revised their blanket request to twenty-four separate categories of documents that the SEC had sought

from Defendants during its investigation. These requests were nearly identical to requests that Plaintiffs had already separately asked Defendants to produce and <u>which Defendants had already agreed to produce</u>, subject to the parties' good faith negotiations over a reasonable set of custodians and search terms. Thus, Plaintiffs were asking Defendants to search for and produce the same documents <u>twice</u> – once in the original files of current or former UBS employees and a second time in the remaining archives of the former SEC production. Such a search by the UBS Entities themselves would be extremely burdensome because the UBS Entities have not maintained a readily available and searchable database for that long-completed regulatory production. And, Plaintiffs now want to extend that burden to the SEC by demanding that the SEC conduct a <u>third</u> search for these same documents in its files. But Plaintiffs are unable to explain why a single direct search of the original files is insufficient for their purposes. The fact that documents had been produced to the SEC is *not* relevant to the civil litigation, only the underlying information is relevant.

Although Defendants vigorously disagree with Plaintiffs' requested discovery, Defendants acknowledge that the parties had discussed this point at length and had reached a good faith impasse. As a result, Defendants expected Plaintiffs to follow through on their threats to file a motion to compel in the District of Puerto Rico. Instead, Plaintiffs served a subpoena on the SEC in Washington that copies word-for-word the twenty-four requests already made to Defendants. Plaintiffs are blatantly using a Rule 45 subpoena to go around Defendants' well-grounded objections and to avoid a ruling in Puerto Rico on the scope of discovery in the underlying litigation.

Not only is this attempt to end-run Defendants' opposition improper, but it places a grossly unfair burden on the SEC. As explained further herein, Plaintiffs' subpoena to the SEC would require the SEC to review and isolate, among the millions of pages of documents the UBS Entities produced, only those documents that were produced in response to the twenty-four

2

specific requests Plaintiffs have identified. Many of the documents the UBS Entities produced are not relevant to this litigation, and Plaintiffs would not be entitled to receive these documents within the parameters of civil litigation discovery. The SEC should not be compelled to expend its resources to undertake the burden of such a painstaking review, <u>particularly when that same discovery can and will be obtained from Defendants' original files</u>.

Alternatively, the Court may stay a decision pending a ruling from the District of Puerto Rico as to scope of discovery in the underlying action or transfer this matter to that District so that important decisions regarding the scope of discovery are made by the Judge most familiar with the underlying litigation.

## RELEVANT FACTS

**A.     The UBS Entities Produce Millions Of Pages Of Documents Containing Confidential Information To The SEC As Part Of A Broad Investigation Of The Puerto Rico Funds.**

In or around early 2009, the SEC commenced a confidential examination of the UBS Entities that included – but extended far beyond – the events underlying this securities litigation. (Decl. ¶ 14)[1] At the outset of the examination, and in recognition of the SEC's extensive investigative authority, Defendants agreed to make available to the SEC e-mails from 421 custodians after applying 133 English language search terms and their Spanish equivalents. (Decl. ¶ 14) Following that initial production, the SEC issued a series of investigatory subpoenas to the UBS Entities, and, over the course of the next three years, the UBS Entities made over 60 additional rolling productions of documents collected from nearly 30 custodians. (Decl. ¶ 15)

The UBS Entities produced, for some custodians, only e-mails that hit on search terms (which were much broader than the events at issue in this litigation). For some other

---

[1]     Citations to the Declaration of Andrew M. Lawrence in Support of Defendants' Motion to Quash Subpoena will be in the form "Decl. ¶ ___."

custodians, search terms were not used.  Instead, the UBS Entities produced <u>all non-privileged e-mails</u> for certain time periods.  (Decl. ¶ 16)  In addition, as a general matter, when producing documents, the UBS Entities did not indicate which specific requests were covered by that production.  (Decl. ¶ 17)

Collectively, the UBS Entities' productions to the SEC totaled millions of pages of e-mail correspondence and documents.  (Decl. ¶ 18)  Only a portion of the documents that were produced related to the pricing and maintenance of a secondary market for the UBS Puerto Rico Funds – the matters at issue in this litigation.  (Decl. ¶ 18)

The productions made to the SEC included numerous confidential and proprietary communications and documents.  As such, the UBS Entities made each of their productions with the express request and understanding that the materials would remain confidential.  (Decl. ¶ 19)

**B.      The SEC Settles With the UBS Entities, And Its Claims Against Ferrer And Ortiz Are Dismissed On The Merits.**

Following its wide-ranging investigation, the SEC agreed to settle any claims it might have against the UBS Entities.  (Ex. 1, Order Instituting Administrative Cease & Desist Proceedings)  In connection with the settlement, UBS PR agreed to create a fund that would provide restitution to investors in the Funds who made legitimate claims that they had been damaged in connection with their investments in the Funds.  *Id.*

Defendants Ferrer and Ortiz, however, refused to settle.  They took their case to trial before an Administrative Law Judge and obtained a <u>complete</u> <u>dismissal</u> of the SEC's claims on the merits.  Specifically, on October 29, 2013, after a 13-day trial during which 536 exhibits were presented and 29 witnesses testified, Chief Administrative Law Judge Brenda P. Murray concluded that UBS PR, Ferrer and Ortiz "did not make misrepresentations or omissions to customers" who invested in closed-end funds and "did not mislead customers … when they represented the Funds as profitable, safe, and stable investments, and that supply and demand

were responsible for Fund prices." (Ex. 2, *In the Matter of Miguel A. Ferrer & Carlos J. Ortiz*, File No. 3-14862, Initial Decision Release No. 513 (Oct. 29, 2013) (the "ALJ Decision") at 88, 91) Defendants have produced to Plaintiffs the transcripts and exhibits from that trial – which focused squarely on the same issues as the securities action – but (as discussed below) have continued to resist Plaintiffs' far broader requests concerning the SEC investigation.

## C.   Plaintiffs Seek To "Clone" The SEC's Discovery.

Plaintiffs filed their private securities action on August 13, 2012, after the SEC had settled its claims against the UBS Entities but before the ALJ had dismissed the claims against Ferrer and Ortiz. Their Amended Complaint raises claims against the UBS Entities, the Funds, Ferrer and Ortiz related to the pricing and secondary market for the UBS Puerto Rico Funds from January 1, 2008 to May 1, 2012.

Plaintiffs' discovery directed to Defendants in the securities action duplicates the requests in their Subpoena. On November 3, 2014, Plaintiffs served Defendants with two sets of document requests,[2] which together sought 27 separate categories of documents, many of which go far beyond the scope of Plaintiffs' claims. Included in these categories of documents, Plaintiffs requested "[a]ll Documents provided to the SEC in *In the Matter of Miguel A. Ferrer & Carlos J. Ortiz* or in conjunction with the SEC's May 1, 2012 Order Instituting Administrative and Cease-and-Desist Proceedings resulting in the ALJ Decision" (Ex. 3, Plaintiffs' First Request for Production of Documents from Defendants ("Plaintiffs' First RFP"), Request No. 1) and "[a]ll Documents provided to, including all Communications exchanged with, any Government Agency in connection with any investigation concerning EFs or the sale of shares in CEFs during the Relevant Period." (Ex. 4, Plaintiffs' Second Set of Requests for Production of Documents

---

[2]   Plaintiffs' First Request for Production of Documents was only directed to the UBS Entities, Ferrer, and Ortiz. (Ex. 3) Plaintiffs' Second Request for Production of Documents was directed at all Defendants, including the Funds. (Ex. 4)

from Defendants ("Plaintiffs' Second RFP," and together with Plaintiffs' First RFP, "Plaintiffs'

RFPs"), Request No. 19)  In essence, Plaintiffs have sought to "clone" the entirety of the

discovery the SEC obtained during its expansive examination and investigation.

## D.    The Parties Engage In Four Months Of "Meet And Confer" Negotiations Regarding UBS' Productions To The SEC.

Even before Defendants served their responses and objections to Plaintiffs' RFPs,

Defendants informed Plaintiffs that they would not agree to produce documents in response to

requests that sought all documents produced to the SEC in connection with its examination,

investigation and subsequent administrative proceeding.  Defendants formalized this position on

December 8, 2014 by timely serving responses and objections to Plaintiffs' RFPs that specifically

objected to Plaintiffs' First RFP Request No. 1 and Plaintiffs' Second RFP Request No. 19

because (among other things) those requests sought to clone the entirety of what was produced in

the SEC Examination. (*See generally* Ex. 5, Defendants' Responses and Objections to Plaintiffs'

First RFP; Ex. 6, Defendants' Responses and Objections to Plaintiffs' Second RFP)  Defendants

objected that Plaintiffs' requests were overly broad, unduly burdensome and not reasonably

calculated to lead to the discovery admissible evidence.  (*See generally id.*)

After Defendants served their responses and objections, the Parties held several

"meet and confer" teleconferences in which Defendants explained their objections to Plaintiffs'

requests for documents produced to the SEC.  Namely, Defendants objected to the relevance of

whether a particular document had been produced to the SEC.  Defendants agreed, however, to

conduct a search of its records for documents responsive to Plaintiffs' numerous other requests

and to produce any responsive, non-privileged documents, subject to the terms typical of usual

discovery practice, such as a confidentiality agreement executed by all parties and the selection

of a reasonable number of custodians and the application of reasonable search terms for

electronic discovery.  To that end, Defendants sought to negotiate search terms and custodians

with Plaintiffs in December 2014, but Plaintiffs insisted that they were not prepared to discuss

search terms and custodians, and instead demanded information about Defendants' prior

productions to the SEC. (Ex. 7, E-mail from Beth Kaswan to Nicole A. DiSalvo, *et al.*, dated

December 18, 2014) Plaintiffs indicated at that time that, if the parties could not come to an

agreement, Plaintiffs would move to compel production of all documents produced to the SEC.

        On December 4, 2014, Plaintiffs notified Defendants that they intended to serve a

subpoena on the SEC seeking, among other things, copies of all subpoenas that the SEC had

issued to the UBS Entities in connection with its examination and investigation that ultimately

led to the administrative proceeding. (Ex. 8, Plaintiffs' subpoena to SEC, dated December 3,

2014) On January 14, 2015, Plaintiffs informed Defendants that the SEC had produced

documents in response to the subpoena. (Ex. 9, Letter from Amanda Lawrence to Nicole A.

DiSalvo, *et al.*, dated January 14, 2015)

        Using the subpoenas it obtained from the SEC, Plaintiffs sent an e-mail to

Defendants on January 21, 2015, demanding twenty-two categories of documents that the SEC

had previously requested from Defendants. (Ex. 10, E-mail from Amanda Lawrence to Nicole A.

DiSalvo, *et al.*, dated January 21, 2015 (the "January 2015 E-mail Requests")) These requests

were purportedly in lieu of a production of all documents that the UBS Entities had previously

produced to the SEC.

        During a telephonic meet-and-confer with Plaintiffs on January 22, 2015,

Defendants objected to these e-mail requests as not only improper but also duplicative of

document requests that Plaintiffs had already served on Defendants and to which Defendants had

responded and agreed to produce responsive documents when the parties agreed to custodians

and search terms. Defendants tried to focus Plaintiffs on the underlying documents directly

relevant to their case and not on the SEC's wholly independent investigation. Defendants

therefore sought to negotiate a list of relevant custodians with Plaintiffs during that

teleconference.  Plaintiffs refused to discuss custodians at that time, and instead stated that they

intended to file a motion to compel the production of the documents produced to the SEC.

### E.    Plaintiffs' Subpoena Requests The Same Documents From The SEC That Plaintiffs Previously Requested From Defendants.

Plaintiffs have not filed their threatened motion to compel.  Instead, Plaintiffs

issued a duplicative subpoena to the SEC in Washington, D.C. on January 29, 2015, demanding

that the SEC produce the same categories of documents that were listed in the Plaintiffs' January

2015 E-mail Request to Defendants.  (Ex. 11, Plaintiffs' subpoena to SEC, dated January 29,

2015 (the "Subpoena"))  This Motion asks this Court to quash that Subpoena.

## ARGUMENT

### I.    PLAINTIFFS' SUBPOENA SHOULD BE QUASHED BECAUSE IT IS AN ATTEMPT TO END-RUN THE NORMAL DISCOVERY PROCESS IN PUERTO RICO.

Plaintiffs' Subpoena should be quashed because it is a blatant attempt to end-run

Defendants' well-grounded objections and to avoid litigating those objections before the court

hearing the securities action.  *See Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, No. 09-61436-

CIV, 2014 WL 1047411, at *3 (S.D. Fla. Mar. 18, 2014) ("A subpoena duces tecum should not

be used to circumvent the ordinary strictures of discovery.").  *Cf. id.* ("But even if service of a

subpoena on a party were permissible, a subpoena may not be used to circumvent or do an 'end-

run' around the discovery rules that apply to a party.").  Normal discovery practice requires that

the parties:  (i) negotiate the proper scope of relevant discovery in the action; (ii) engage in

negotiations over reasonable search terms and custodians in order to narrow Plaintiffs' overly

broad document requests and (iii) then – in the event that negotiations do not result in mutual

agreement – seek an appropriate remedy in the District of Puerto Rico.  *See, e.g.*, *Brown v.

Tellermate Holdings Ltd.*, No. 2:11-cv-1122, 2014 WL 2987051, at *16 (S.D. Ohio July 1, 2014)

(stating that discussions over discovery "should include cooperative planning" regarding the

"number and identities of custodians whose data will be preserved or collected" and "search terms and methodologies to be employed to identify responsive data"); *In re Facebook PPC Adver. Litig.*, No. C09-03043 JF (HRL), 2011 WL 1324516, at *1 n.1 (N.D. Cal. Apr. 6, 2011) ("'Among the items about which the court expects counsel to "reach practical agreement" *without the court having to micro-manage e-discovery* are "search terms, date ranges, key players and the like."'") (citation omitted).[3] Here, the parties have spent many months negotiating the relevant scope of discovery in this litigation. *See* pp. 6-8, *supra*. When they reached a stalemate over the relevance of documents produced to the SEC, that dispute should have been presented to Judge Cerezo in Puerto Rico. Instead, Plaintiffs have burdened judicial and government resources by serving a Subpoena on the SEC that forces Defendants to litigate this issue in a remote jurisdiction.

But Plaintiffs' gamesmanship should give them no advantage. Federal Rule of Civil Procedure 26(b)(1)'s requirement that documents sought be relevant to the litigation applies with equal force to subpoenas issued pursuant to Rule 45. *Hesco Bastion Ltd. v. Greenberg Traurig LLP*, No. 09-0357 RWR/DAR, 2009 WL 5216932, at *3 (D.D.C. Dec. 23, 2009) (citing Advisory Committee Note to 1946 Amendments to Rule 26). Put simply, Defendants do not understand Plaintiffs' fixation on the SEC investigation. Despite many conversations regarding Plaintiffs' request for these documents, Plaintiffs have yet to identify any reason why the fact that Defendants produced documents to the SEC is relevant to this case. *See King Cnty. v. Merrill*

---

[3]     Defendants have standing to quash the Subpoena, which seeks irrelevant discovery regarding the confidential commercial and proprietary information of Defendants. *See, e.g., EnviroPAK Corp. v. Zenfinity Capital, LLC*, No. 4:14CV00754 ERW, 2014 WL 4715384, at *5 (E.D. Mo. Sept. 22, 2014) (holding plaintiff had standing to move to quash subpoena of sensitive financial and business information plaintiff had previously provided to subpoenaed third party); *Turnbow v. Life Partners, Inc.*, No. 3:11-cv-1030-M, 2013 WL 1632795, at *1 (N.D. Tex. Apr. 16, 2013) (holding defendants had standing to move to quash a subpoena of "accounting records and other sensitive financial information and communications pertaining to Defendants and their business").

*Lynch & Co.*, No. C10-1156-RSM, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011) (cloned

discovery "'is irrelevant and immaterial unless the fact that particular documents were produced

or received by a party is relevant to the subject matter of the subject case.'") (quoting *Midwest*

*Gas Servs., Inc. v. Indiana Gas Co.*, No. IP99-0690-C-Y/G, 2000 WL 760700, at *1 (S.D. Ind.

Mar. 7, 2000)).

   Indeed, federal courts prohibit so-called "cloned" discovery because it "could

potentially allow plaintiff to bypass the limitations on the scope of discovery established by the

[Federal] Rules." *Pensacola Firefighters' Relief Pension Fund Bd. of Trs. v. Merrill Lynch*

*Pierce Fenner & Smith, Inc.*, 265 F.R.D. 589, 597 (N.D. Fla. 2010) (holding plaintiffs were not

entitled to production of all documents produced to the SEC during investigation).[4] Here, that

would certainly be the case because the UBS Entities produced many more confidential

documents to the SEC in response to its broad subpoena powers than would be produced to a

civil litigant. *See* pp. 3-4, *supra*. The mere fact that there may be some similarities between the

allegations in the civil litigation and the SEC administrative proceeding does not make the

production to the SEC relevant to the litigation. *Chen v. Ampco Sys. Parking*, No. 08-cv-0422-

BEN (JMA), 2009 WL 2496729, at *2 (S.D. Cal. Aug. 14, 2009) (denying motion to compel

production of cloned discovery because "[a]lthough Plaintiff identifies certain similarities

between the state cases and this case, such similarities are not enough to require a *carte blanche*

production of all documents from the state cases").

   It bears emphasis that Defendants have already agreed to produce documents that

are responsive to requests made by Plaintiffs that encompass the same subjects that Plaintiffs

seek in their Subpoena. *See* pp. 6-7, *supra*. In other words, Plaintiffs will be getting the

---

[4] *See also Capital Ventures Int'l v. J.P. Morgan Mortg. Acquisition Corp.*, No. 12-10085-
RWZ, 2014 WL 1431124, at *2 (D. Mass. Apr. 14, 2014) (denying request for all documents
produced in other lawsuits and to government agencies because "request for 'cloned discovery'
[wa]s … overbroad and of speculative relevance").

underlying documents, but Plaintiffs want Defendants to search for other copies in Defendants'
records of its production to the SEC (which are not readily available or searchable) and Plaintiffs
want the SEC to search for and produce what would be a third set of copies from the SEC's
records of its investigation.  A single search of the original source materials is more than
sufficient.

## II.   PLAINTIFFS' SUBPOENA SHOULD BE QUASHED BECAUSE IT SEEKS IRRELEVANT DOCUMENTS AND WILL PLACE AN UNDUE BURDEN ON THE SEC TO COMPLY.

Defendants not only have strong relevance and confidentiality objections to the
Subpoena, but complying with the Subpoena's twenty-four separate requests also places an
undue burden on the SEC.  Under Rule 45 of the Federal Rules of Civil Procedures, "[a] party or
attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid
imposing undue burden or expense on a person subject to the subpoena" and "[t]he court for the
district where compliance is required must enforce this duty." Fed. R. Civ. P. 45(d)(1).  The
issue of undue burden is of particular importance where, as here, a subpoena is aimed at a non-
party governmental agency for use in a civil suit.  As the D.C. Circuit has acknowledged,
"discovery under Rules 26 and 45 must properly accommodate 'the government's serious and
legitimate concern that its employee resources not be commandeered into service by private
litigants to the detriment of the smooth functioning of government operations.'" *Watts v. S.E.C.*,
482 F.3d 501, 509 (D.C. Cir. 2007) (quoting *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34
F.3d 774, 779 (9th Cir. 1994)).[5]  In this case, requiring the SEC to comply with Plaintiffs'
Subpoena would impose an undue burden on the SEC because the Subpoena seeks (1) to
commandeer the SEC's resources to cull through the millions of pages of confidential documents

---

[5]      *See also In re Motion to Compel Compliance with Subpoena Direct to Dep't of Veterans Affairs*, 257 F.R.D. 12, 18 (D.D.C. 2009)  ("[The court's] obligation is particularly acute lest public resources be commandeered for private purposes."); *Town of Wolfeboro v. Wright-Pierce*, No. 12-cv-130-JD, 2014 WL 1713508, at *1 (D.N.H. Apr. 30, 2014).

that the UBS Entities produced in order to identify the specific documents that Plaintiffs are

requesting; and (2) to require the SEC to produce cumulative and duplicative discovery that

Plaintiffs have already requested from Defendants.

Likely in recognition of the prohibition on "cloned discovery" *see* pp. 9-10, *supra.*,

Plaintiffs purported to narrow their requests to seek a subset of the UBS Entities' production, but

this only exacerbates the burden on the SEC itself.  When the UBS Entities made productions to

the SEC, it was not their general practice to identify the specific requests as to which each

document or set of documents pertained.  *See* p. 4, *supra.*  In fact, for some custodians, instead of

reviewing each individual document for responsiveness, the UBS Entities simply produced their

entire set of e-mails for certain periods of time – an act of trust that the UBS Entities afforded to

a government agency that never would have been acceptable in ordinary civil litigation.  *See* p. 4,

*supra.*  Given the manner in which these documents were produced, the SEC would have no way

to determine which documents were actually responsive to the specific requests Plaintiffs have

identified unless it reviewed every document that the UBS Entities produced and made its own

decision as to responsiveness.  Defendants submit that placing such a burden on the SEC is

unnecessary and unfair.  In addition, the UBS Entities' productions in response to the SEC's

investigatory subpoenas almost certainly contained confidential and proprietary documents that

are not relevant to Plaintiffs' claims in this action.  To ask the SEC to screen out such

confidential information is not only an undue burden, but it deprives Defendants of the

opportunity to protect their own interest.  The imposition of such excessive burdens on the SEC

is contrary to federal law.  *See Watts*, 482 F.3d at 509.

Furthermore, requiring the SEC to re-review the UBS Entities' productions is

entirely unnecessary.  The documents Plaintiffs are seeking are available from a more convenient,

less burdensome source – namely, the Defendants' original files.  Under Rule 45 of the Federal

Rules of Civil Procedure, a court must limit discovery sought by a subpoena if it is

"'unreasonably cumulative or duplicative'" or is "'obtainable from some other source that is more

convenient, less burdensome, or less expensive.'" *Watts*, 482 F.3d at 509 (quoting Rule 26(b)(1)

and (2)of the Federal Rules of Civil Procedure, and holding that those provisions apply to

subpoenas issued pursuant to Rule 45).  Indeed, this Court has held, in similar circumstances,

that "even modifying [a] subpoena to seek [] limited information is unduly burdensome [in] the

absence of any showing that the information sought is not available from other sources." *In re*

*Motion to Compel Compliance with Subpoena Direct to Dep't of Veterans Affairs*, 257 F.R.D. at

19 ("Until Burlodge at least makes the effort [to seek documents from it opponent] and fails for

some reason not attributable to its own fault, this Court cannot possibly determine whether any

subpoena to DVA, no matter how limited, is still unduly burdensome because the information

sought 'can be obtained from some other source that is more convenient, less burdensome, or less

expensive.'"); *see also Educ. Fin. Council v. Oberg*, No. 10-MC-0079 (JDB), 2010 WL 3719921,

at *3 (D.D.C. Mar. 8, 2010) (holding that, although information sought might have been

"extremely relevant at trial" "[n]onetheless, Oberg's request imposes an undue burden on EFC

[*i.e.* a non-party] because it appears that many, if not all, of EFC's communications with the

defendants are available from the defendants to the underlying litigation themselves").

   Other federal courts agree that a subpoena must be quashed if it seeks documents

from a non-party that could be obtained from a party to the action.  *See, e.g.*, *Cusumano v.*

*Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) (quashing subpoena seeking evidence

available from employees of party opponent and stating "concern for the unwanted burden thrust

upon non-parties is a factor entitled to special weight in evaluating the balance of competing

needs"); *Town of Wolfeboro*, 2014 WL 1713508, at *1 ("'If the party seeking the information can

easily obtain the same information without burdening the nonparty, the court will quash the

subpoena.'") (citation omitted); *Nalco Co. v. Turner Designs, Inc.*, No. 13-cv-02727 NC, 2014

WL 1311571, at *2 (N.D. Cal. Mar. 31, 2014) ("'There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant.'") (citation omitted).

Here, Plaintiffs' Subpoena requests precisely the same documents that Plaintiffs have already requested from Defendants and which Defendants have agreed to produce, subject to an agreement on reasonable search terms and custodians. (*See* Ex. __) Because Plaintiffs can obtain the same exact materials from a more convenient and less burdensome source – *i.e.*, from Defendants – the burden on the SEC in responding to the Subpoena is entirely unnecessary, and thus an undue burden. *See, e.g.*, *Belk v. Smith*, No. 1:10CV724, 2014 WL 4986678, at *2 (M.D.N.C. Oct. 6, 2014) (denying motion to order production from non-party federal agency because "prudence dictates that [the requesting party] should seek the relevant information from [its opponent] before asking this Court to order the federal government to turn over the requested records"); *In re Motion to Compel Compliance with Subpoena Direct to Dep't of Veterans Affairs*, 257 F.R.D. at 19 (quashing subpoena of non-party federal agency because even if court modified subpoena to limit its requests to relevant information it would be "unduly burdensome because of the absence of any showing that the information sought is not available from other sources").

**III.  ALTERNATIVELY, THE COURT MAY STAY A DECISION ON THE MOTION TO QUASH PENDING RESOLUTION OF THE SCOPE OF DISCOVERY BY THE DISTRICT OF PUERTO RICO OR TRANSFER THE MOTION TO PUERTO RICO.**

Alternatively, Defendants respectfully submit that the Court may stay a decision on the Motion until the District of Puerto Rico has the opportunity to consider these discovery disputes in motion practice between the parties in that Court. The Court has substantial discretion to stay subpoena-enforcement proceedings when the issue may be resolved by a ruling from the court hearing the underlying lawsuit. *Prosonic Corp. v. Baker*, No. 2:08–mc–007, 2008 WL 1766887, *1 (S.D. Ohio Apr. 7, 2008) (citing *Floorgraphics v. News Am. Mktg. In-Store Servs.*, 2007 WL 1544572 (D. Minn. May 23, 2007)).

Defendants fully expected Plaintiffs to present this matter to the District of Puerto Rico. After months of "meet and confer" calls, it was clear that the parties had reached an impasse and Plaintiffs had stated that they would file a motion forthwith. Defendants respectfully submit that judicial efficiency may be served by staying this matter pending the outcome of the motion Plaintiffs have promised to file in Puerto Rico.

Alternatively, the Court should transfer this Motion to the District of Puerto Rico. This result is appropriate where, as here, Plaintiffs' efforts to obtain the same discovery from the SEC and Defendants could result in inconsistent discovery decisions by the Courts and needlessly duplicative efforts by the producing parties. *See Wultz v. Bank of China, Ltd*, No. 13-1282 (RBW), 2014 WL 2257296, at *7 (D.D.C. May 30, 2014) (transferring motion to quash to issuing court and stating there are "circumstances warranting transferring subpoena-related motions to quash when transferring the matter is in 'the interests of judicial economy and avoiding inconsistent results'") (citation omitted).

## CONCLUSION

WHEREFORE, Defendants respectfully request that the Court quash Plaintiffs'

Subpoena.

Dated:  February 11, 2015

Respectfully submitted,

Andrew M. Lawrence (D.C. Bar No. 494537)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC  20005-2111
Tel.: (202) 371-7097
Andrew.Lawrence@skadden.com

Paul J. Lockwood (D.C. Bar No. 1009825)
Nicole A. DiSalvo (D.C. Bar No. 1002519)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, DE  19899-0636
Tel.:  (302) 651-3000
Paul.Lockwood@skadden.com
Nicole.DiSalvo@skadden.com

*Attorneys for Defendants UBS Financial
Services Incorporated of Puerto Rico, UBS
Trust Company of Puerto Rico, UBS
Financial Services Inc., and Carlos J. Ortiz*

1343788-WASSR01A - MSW

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                      :
In re: UBS FINANCIAL SERVICES, INC. OF     :     Civil Action No. _____
PUERTO RICO SECURITIES LITIGATION          :
                                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DECLARATION OF ANDREW M. LAWRENCE IN SUPPORT OF DEFENDANTS' MOTION TO QUASH SUBPOENA

I, Andrew M. Lawrence, declare pursuant to 28 U.S.C. § 1746 as follows:

1.      I am a member in good standing of the Bar of the District of Columbia and a partner in the law firm Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), which is counsel for defendants UBS Financial Services Incorporated of Puerto Rico, UBS Trust Company of Puerto Rico, UBS Financial Services Inc., and Carlos J. Ortiz (collectively, the "Defendants").  I have personal knowledge of the matters set forth herein, unless otherwise noted.

2.      I submit this declaration in support of Defendants' Motion to Quash Non-Party Subpoena Served By Plaintiffs.

3.      Attached hereto as Exhibit 1 is a true and correct copy of the Order Instituting Administrative Cease & Desist Proceedings.

4.      Attached hereto as Exhibit 2 is a true and correct copy of *In the Matter of Miguel A. Ferrer & Carlos J. Ortiz*, File No. 3-14862, Initial Decision Release No. 513 (Oct. 29, 2013).

5.      Attached hereto as Exhibit 3 is a true and correct copy of Plaintiffs' First Request for Production of Documents from Defendants.

6.      Attached hereto as Exhibit 4 is a true and correct copy of Plaintiffs' Second Set of Requests for Production of Documents from Defendants.

7.      Attached hereto as Exhibit 5 is a true and correct copy of Defendants' Responses and Objections to Plaintiffs' First Request for Production of Documents from Defendants.

8.      Attached hereto as Exhibit 6 is a true and correct copy of Defendants' Responses and Objections to Plaintiffs' Second Request for Production of Documents from Defendants.

9.      Attached hereto as Exhibit 7 is a true and correct copy of the E-mail from Beth Kaswan to Nicole A. DiSalvo, *et al.*, dated December 18, 2014.

10.     Attached hereto as Exhibit 8 is a true and correct copy of Plaintiffs' subpoena to SEC, dated December 3, 2014.

11.     Attached hereto as Exhibit 9 is a true and correct copy of the Letter from Amanda Lawrence to Nicole A. DiSalvo, *et al.*, dated January 14, 2015.

12.     Attached hereto as Exhibit 10 is a true and correct copy of the E-mail from Amanda Lawrence to Nicole A. DiSalvo, *et al.*, dated January 21, 2015.

13.     Attached hereto as Exhibit 11 is a true and correct copy of Plaintiffs' subpoena to SEC, dated January 29, 2015.

14.     In or around early 2009, the U.S. Securities and Exchange Commission (the "SEC") commenced a confidential examination of UBS Financial Services Incorporated of Puerto Rico, UBS Trust Company of Puerto Rico, and UBS Financial Services, Inc. (the "UBS Entities") (the "SEC Examination"). During its Examination, the SEC sought documents and information from the UBS Entities related to a series of Puerto Rico mutual funds sponsored and managed by the UBS Entities. At the outset of the SEC Examination, the UBS Entities made available to the SEC, among other things, emails from 421 custodians after applying 133 English language search terms and their Spanish equivalents. Although Skadden was not engaged to assist in that initial production to the SEC, I have knowledge of the circumstances surrounding that initial production as a result of Skadden's work on subsequent productions.

15.     Following the UBS Entities' initial production, the SEC issued a series of investigatory subpoenas to the UBS Entities. Skadden was engaged to represent the UBS Entities in connection with the SEC Examination, and I personally assisted in preparing

2

documents for production to the SEC.  Starting on September 3, 2009 and continuing through September 19, 2012, the UBS Entities produced over 1.3 million pages of documents to the SEC. Skadden transmitted these documents to the SEC on behalf of UBS in over 60 additional rolling productions.  These productions included documents collected from nearly 30 custodians.

16.     For some custodians, the UBS Entities produced only those e-mails that hit on agreed-upon search terms.  For other custodians, the UBS Entities produced all non-privileged e-mails for certain time periods.

17.     Occasionally, the UBS Entities would indicate that certain documents were being produced in response to specific subpoena requests; however, for the vast majority of the productions, the UBS Entities did not identify which subpoena requests the documents were being produced in response to.

18.     Collectively, the UBS Entities' productions to the SEC totaled millions of pages of e-mail correspondence and documents.  Only a portion of the documents that were produced related to the pricing and maintenance of a secondary market for the UBS PR Funds.

19.     The productions made to the SEC included numerous confidential and proprietary communications and documents.  As such, the UBS Entities made each and every one of their productions with the express request and understanding that the materials would remain confidential.

I declare under penalty of perjury that the foregoing is true and correct.  Executed in Washington, D.C. this 11th day of February, 2015.

Andrew M. Lawrence (D.C. Bar No. 494537)